**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

ARTUR GOMES,                    :
    PLAINTIFF,              :
                            :                 CIVIL ACTION NO.
    v.                      :                 3:11-CV-01825 (VLB)
                            :
UNITED STATES OF AMERICA,       :
    DEFENDANT.              :                 NOVEMBER 19, 2012

**MEMORANDUM OF DECISION GRANTING DEFENDANT'S' MOTION FOR**
**SUMMARY JUDGMENT [Dkt. #19]**

I.    **Introduction**

    The Plaintiff, Artur Gomes ("Gomes"), brings this negligence action grounded in premises liability for monetary relief against the Defendant United States of America ("United States") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §1346(b), in recompense for injuries he sustained when he allegedly slipped and fell on wet leaves which had accumulated on a set of outdoor steps on the Defendant's premises.  Currently pending before the Court is the Defendant's Motion for Summary Judgment.  For the reasons that follow, the Defendant's Motion for Summary Judgment is GRANTED.

II.    **Factual Background**

    The following facts relevant to the Defendant's Motion for Summary Judgment are undisputed unless otherwise noted.  The Defendant United States operates a post office located at 340 Main Street, Norwich, Connecticut (the

"Norwich Post Office" or "Post Office").  [Dkt. 1, Compl. at ¶ 2; Dkt. 8, Answer at ¶ 2].  Gomes maintained a post office box on the premises of the Norwich Post Office beginning in 2006 through early 2012, where he was a regular customer and routinely checked his post office box four to five times per week. [Dkt. 19-8, D's R. 56 Stmt. at ¶¶ 2, 3; Dkt. 19-12, Gomes Dep. at p. 71].  Gomes admits that he had been up and down the outdoor stairs leading to the Post Office entrance several hundred times prior to the date of the incident at issue in this action, including when it was raining, sleeting, and snowing.  [Dkt. 19-8, D's R. 56 Stmt. at ¶ 11; Dkt. 19-12, Gomes Dep. at p. 73].

Gomes contends that he entered the Norwich Post Office to check his post office box in the early afternoon on October 21, 2010, using the side steps closest to the loading dock.  [Dkt. 19-8, D's R. 56 Stmt. at ¶¶ 9, 16; Dkt. 19-12, Gomes Dep. at pp. 74, 78].  Gomes recalls that it was raining at the time, and he was not carrying an umbrella.  [Dkt. 19-8, D's R. 56 Stmt. at ¶¶ 14, 15; Dkt. 19-12, Gomes Dep. at pp. 90, 91].  When asked whether he noticed any leaves on this set of stairs while walking up and into the Post Office, Gomes stated, "I didn't notice anything.  It could be there, but I didn't notice it."  [Dkt. 19-8, D's R. 56 Stmt. at ¶ 17; Dkt. 19-12, Gomes Dep. at p. 98].  Gomes also confirmed that there was nothing obstructing his view of the steps when he climbed them to enter the Post Office.  [Dkt. 19-12, Gomes Dep. at p. 98].  Gomes contends that, had he noticed any danger on the steps, he would have notified postal authorities of the danger. [Dkt. 19-8, D's R. 56 Stmt. at ¶ 18; Dkt. 19-12, Gomes Dep. at p. 105].  Gomes remained in the Post Office for less than or about two minutes, after which he

exited the same way he entered.  [Dkt. 19-8, D's R. 56 Stmt. at ¶¶ 20, 21; Dkt. 19-12, Gomes Dep. at pp. 75, 77, 79].  He admits that he did not speak with any post office employee while inside the Post Office.  [Dkt. 19-8, D's R. 56 Stmt. at ¶19; Dkt. 19-12, Gomes Dep. at p. 76].

Gomes alleges that, after exiting the Post Office, he slipped and fell on an accumulation of wet leaves that covered the same set of stairs by which he had entered approximately two minutes prior.  [Dkt. 19-8, D's R. 56 Stmt. at ¶ 10, ¶21; Dkt. 19-12, Gomes Dep. at pp. 76-77, 90].  Gomes contends that he fell backwards from the second step from the top and his "palm hit the edge of the stairs and the whole back just flipped, like came forward.  Like, it bent."  [Dkt. 19-8, D's R. 56 Stmt. at ¶ 23; Dkt. 19-12, Gomes Dep. at p. 104].  He further testified during deposition that, "[a]fter I fell I notice leaves, a lot of leaves."  [Dkt. 19-8, D's R. 56 Stmt. at ¶ 24; Dkt. 19-12, Gomes Dep. at p. 90].  In an affidavit submitted with his opposition to Defendant's motion, though, Gomes asserts that "[t]here were leaves on these stairs every time I went to the post office in mid to late October 2010" and "I had not noticed the leaves when I entered because they were always there at that time.  If I hadn't fallen on the wet leaves I would not have noticed them on my way out, either."  [Dkt. 23, P's Opp. to MSJ at Exh. 1, Gomes Aff. at ¶¶ 6, 8].  No witnesses saw the fall and Gomes did not report the accident to postal authorities that day or within a few days.  [Dkt. 19-8, D's R. 56 Stmt. at ¶¶ 8, 27; Dkt. 19-12, Gomes Dep. at p. 120; Dkt. 19-9, P's Responses to D's Interrogs. at ¶ 8].  Instead, after falling, Gomes continued to his car and drove straight to the emergency room at the William W. Backus Hospital where he received treatment

for a left distal radius fracture.  [Dkt. 19-8, D's R. 56 Stmt. at ¶¶ 28, 29; Dkt. 19-12, Gomes Dep. at p. 105, 106; Dkt. 19-9, P's Responses to D's Interrogs. at ¶ 1]. Gomes subsequently underwent orthopedic surgery to set the bone and affix a locking plate.  [Dkt. 19-8, D's R. 56 Stmt. at ¶30].

Gomes submitted an administrative claim to the United States Postal Service ("USPS") on or around November 29, 2010 which was subsequently denied by the Postal Service on August 3, 2011 based on a finding of no USPS negligence.  [Dkt. 1, Compl. at ¶ 8; Dkt. 8, Answer at ¶ 8; Dkt. 19-8, D's R. 56 Stmt. at ¶ 34].  The Defendant United States denies that Gomes' fractured wrist resulted from a fall on the steps at the Norwich Post Office on October 21, 2010.  [Dkt. 19-8, D's R. 56 Stmt. at ¶¶ 10, 21].

## III.  Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of proving that no factual issues exist.  *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir.2010).  "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)).  "If there is any evidence in the

record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir.2006) (internal quotation marks and citation omitted).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.  At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* No.3:03cv481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, No. 3:09cv1341 (VLB), 2011 WL 4396704 at *6 (D. Conn. Sept. 21, 2011).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie.  *Fincher v. Depository Trust and Clearance Co.*, 604 F.3d 712 (2d Cir. 2010).

## IV.    Discussion

Gomes claims that the United States is liable for his personal injuries because it was negligent in maintaining safe conditions on the premises of the Norwich Post Office.  According to Gomes, the Norwich Post Office knew or

**5**

should have known of the presence of wet leaves on the exterior steps, and
therefore had a duty to either remove the leaves or warn of the dangerous
condition.  He contends that genuine issues of material fact exist which would
allow a fact finder to find that the leaves had been on the steps of the Norwich
Post Office long enough so that a reasonable, proper and timely inspection would
have disclosed them, giving the Defendant ample opportunity to have remedied
the condition.  Defendant alleges that Plaintiff has presented no evidence on
which a trier of fact could find that the Post Office had actual or constructive
notice of the allegedly dangerous condition.  The Court finds that Plaintiff's claim
lacks merit.

Gomes brings this negligence action pursuant to the FTCA, under which
the federal government has waived its sovereign immunity where a government
employee commits a tort "while acting within the scope of his office or
employment, under circumstances where the United States, if a private person,
would be liable to the claimant in accordance with the law of the place where the
act or omission occurred."  28 U.S.C. § 1346(b)(1).  "The applicable law to a claim
against the Government under the FTCA is the law that the state where the
tortious incident took place would apply in like circumstances involving a private
defendant."  *Silverman v. U.S.*, No. CV 04-5647, 2008 WL 1827920, at *12 (2d Cir.
Mar. 28, 2008) (*quoting Caban v. U.S.*, 728 F.2d 68, 72 (2d Cir. 1984)); *Davis v. U.S.*,
430 F. Supp. 2d 67, 73 (D. Conn. 2006) ("Under the FTCA the government's liability
is determined by the application of the law of the place where the act or omission
occurred").  Here, because Connecticut law would apply if Gomes brought a

negligence action against a private defendant in this case, Connecticut law applies.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury."  *Baptiste v. Better Val-U Supermarket, Inc.*, 262 Conn. 135, 138 (Conn. 2002) (internal quotation marks and citations omitted).  In this case, the parties do not dispute that Gomes was a business invitee and therefore the Defendant owed him a duty to maintain its premises in a reasonably safe condition.  See *Kelly v. Stop and Shop, Inc.*, 281 Conn. 768, 776 (Conn. 2007); *Martin v. Stop & Shop Supermarket Cos., Inc.*, 70 Conn. App. 250, 251 (Conn. App. Ct. 2002) ("the defendant owed the plaintiff [business invitee] the duty to maintain its premises in a reasonably safe condition"); *James v. Valley-Shore Y.M.C.A., Inc.*, 125 Conn. App. 174, 178 (Conn. App. Ct. 2010) (same).  To hold the Defendant liable for his injuries, Gomes must prove "(1) the existence of a defect, (2) that the defendant knew or in the exercise of reasonable care should have known about the defect and (3) that such defect had existed for such a length of time that the defendant should, in the exercise of reasonable care, have discovered it in time to remedy it."  *Martin*, 70 Conn. App. at 251 (internal quotation marks and citations omitted); *Chaves v. Exxon Mobil Corp.*, (D. Conn. Jan. 5, 2009) (same); *Considine v. City of Waterbury*, 279 Conn. 830, 870 (Conn. 2006) ("in the context of a negligence action based on a defective condition on the defendant's premises, there could be no breach of the duty resting upon the defendants unless they knew of the defective condition or were chargeable with notice of it.") (internal quotation marks and citations omitted).

> Typically, for a plaintiff to recover for the breach of a duty owed to him as a business invitee, it is incumbent upon him to allege and prove that the defendant either had actual notice of the presence of the specific unsafe condition which caused his injury or constructive notice of it.... The notice, whether actual or constructive, must be notice of the very defect which occasioned the injury and not merely of conditions naturally productive of that defect even though subsequently in fact producing it.... In the absence of allegations and proof of any facts that would give rise to an enhanced duty ... a defendant is held to the duty of protecting its business invitees from known, foreseeable dangers.

*Kelly*, 281 Conn. at 776 (internal quotation and grammatical marks omitted); *see also Fisher v. Big Y Foods, Inc.*, 298 Conn. 414, 423-39 (Conn. 2010) (quoting same); *James*, 125 Conn. App. at 179 ("the plaintiff [is] required to prove that the defendant had had actual or constructive notice of the *specific defect* that caused the plaintiff's injuries.") (*quoting Riccio v. Harbour Village Condo. Ass'n., Inc.*, 281 Conn. 160, 164 (Conn. 2007)); *Graham v. Kohl's Dept. Stores, Inc.*, No. 3:04CV949(MRK), 2005 WL 2256603, at *1 (D. Conn. Sept. 8, 2005) ("relevant case law in Connecticut places a heavy burden on a 'slip and fall' plaintiff to demonstrate that a defendant had actual or constructive notice of the specific defect that led to the accident and 'not merely of conditions naturally productive of that defect even though subsequently in fact producing it.'") (citing *LaFaive v. DiLoreto*, 2 Conn. App. 58, 60 (Conn. App. Ct. 1984)).

The Court notes that both *Kelly* and *Fisher*, cited above, addressed the mode of operation theory under Connecticut law. The mode of operation theory, which "allows a customer injured due to a condition inherent in the way [a] store is operated to recover without establishing that the proprietor had actual or

constructive knowledge of the dangerous condition" and applies to "premises liability claims brought by business invitees seeking compensation for injuries arising out of a business owner's self-service method of operation," does not apply to the case at hand (and the parties have not alleged that it does).  *Kelly*, 281 Conn. at 777, 786 (internal citations and quotation marks omitted).  The Connecticut Supreme Court recently held in *Fisher* that "the mode of operation rule, as adopted in Connecticut, does not apply generally to all accidents caused by transitory hazards in self-service retail establishments, but rather, only to those accidents that result from particular hazards that occur regularly, or are inherently foreseeable, due to some specific method of operation employed on the premises," and that this theory is "meant to be a narrow one."  298 Conn. at 424, 437.  As justification for application of this method, the Connecticut Supreme Court has stated that, "because self-service businesses are likely to achieve savings by virtue of their method of operation, it is appropriate to hold them responsible for injuries to customers that are a foreseeable consequence of their use of that merchandising approach unless they take reasonable precautions to prevent such injuries."  *Kelly*, 281 Conn. at 786.

The mode of operation theory applies primarily in cases in which plaintiffs have suffered harm resulting from a particular method in which a retailer has offered items for sale in a self-service area.  Where evidence of a dangerous method of offering goods for sale is lacking, or where the harm caused was not reasonably foreseeable in the self-service area in which it occurred, the mode of operation theory has been held to be inapplicable.  For instance, in *Fisher*, the

plaintiff filed an action in negligence under the mode of operation theory against Big Y Supermarkets after he slipped and fell on a puddle of clear liquid which he believed to be fruit cocktail syrup that had leaked from a product in the aisle in which he slipped.   298 Conn. at 416-17.   At trial, the jury returned a verdict for the plaintiff.   The Connecticut Supreme Court, though, reversed and ordered that the jury verdict be set aside in favor of judgment for the defendant supermarket, concluding that "because no evidence was presented to show that there was anything particularly dangerous about the defendant's method of offering packaged fruit products for sale, making their spillage inherently foreseeable or regularly occurring, the plaintiff failed to make out a prima facie case of negligence under the mode of operation rule." *Id.* at 441.   The Court further concluded that "[w]hen a dangerous condition arises through means other than those reasonably anticipated from the mode of operation, the traditional burden of proving notice remains with the plaintiff." *Id.* at 439 (internal citations and quotation marks omitted).   Here, where there is no allegation that a particular method of operation within the self-service area of the Post Office created a regularly occurring hazardous condition (but rather an allegation that the Plaintiff's injury occurred outside the establishment, on the stairs), or that there was anything particularly dangerous about the Post Office's method of offering products or services for sale in that area, the mode of operation theory is inapplicable.   *See also Martin v. Big Y Foods, Inc.*, No. CV106016107S, 2011 WL 5083977, at *2 (Conn. Super. Ct. Oct. 5, 2011) (holding that, where "the accumulation of water on which the defendant fell is expressly claimed to have

resulted from the work activities of a Store employee that had nothing to do with the store's self-service operations, let alone a condition of danger frequently arising therefrom, the plaintiff's claim of injury . . . is not actionable in negligence under the mode of operation rule."); *Straub v. Stop & Shop Supermarket Co., LLC*, No. FSTCV075003935S, 2009 WL 1814567, at *4 (Conn. Super. Ct. May 29, 2009) (holding that, where bake shop and produce area were on opposite sides of the store and the risk of injury from slipping on a grape in the bake shop was thus not foreseeable, mode of operation rule was not applicable); *Pereira v. Target Stores, Inc.*, No. 3:09–cv–1537 (PCD), 2011 WL 2413495, at *4 (D. Conn. June 10, 2011) (holding that mode of operation rule did not apply where plaintiff slipped on liquid on the floor, there was no evidence that plaintiff slipped in a "zone of risk," and there was nothing dangerous about defendant's "method of offering packaged items for sale that would have made the existence of debris or spillage inherently foreseeable or regularly occurring.").

## Actual Notice

The Defendant argues that Gomes has failed to present any evidence that the Defendant possessed actual notice of the allegedly unsafe condition on the steps leading to the Post Office.  The Court agrees.  Here, Gomes has admitted that he did not notice the presence of leaves on the stairs leading to the Post Office as he was ascending them.  Upon entering the Post Office Gomes did not speak to any Post Office employee, although he contends that, had he noticed any danger on the steps, he would have notified postal authorities.  Gomes remained in the Post Office for approximately two minutes, exited the same way

he entered, and alleges that he promptly slipped and fell while descending the same steps he had just ascended.  He has testified that he only noticed the presence of the leaves after he fell.  No witnesses saw Gomes fall and Gomes himself did not report the accident to postal authorities for weeks.  Gomes presents no evidence that any employee of the Norwich Post Office had actual knowledge of a dangerous condition before, during, or after Gomes' short visit to the Post Office on October 21, 2010.  Likewise, there is no evidence that any other customer at the Norwich Post Office warned the Defendant about the alleged condition on that date.  Absent evidence that the Norwich Post Office had actual notice of the wet leaves on the exterior steps, Plaintiff may not establish actual notice.[1]  *See, e.g., Navarro v. Kohl's Dept. Stores, Inc.*, No. 3:05CV00843 (DJS), 2007 WL 735787, at *4 (D. Conn. Mar. 8, 2007) (holding that, absent evidence that Defendant's employees actually knew of the defective condition - a spilled liquid on the store's floor - or that the employees themselves had created the condition by spilling the liquid on the floor, plaintiff could not establish actual notice); *Mason v. Wal-Mart Stores, Inc.*, No. HHDCV106013281S, 2012 WL 1959006, at *1 (Conn. Super. Ct. May 1, 2012) (where "[n]o evidence was presented that proves that the defendant knew of the unsafe condition prior to the plaintiff's fall," actual notice did not exist).

<u>**Constructive Notice**</u>

---

[1]   The Court notes that the Plaintiff has not disputed in his Opposition to Defendant's motion for summary judgment Defendant's assertion that the Norwich Post Office did not have actual notice of the defect.

Because Defendant did not have actual notice of the alleged defect, the remaining question before this Court is whether a genuine issue of material fact exists as to whether Defendant had constructive notice of the defect that Gomes claims caused his injury.  Defendant argues that Plaintiff has presented no evidence of the length of time the wet leaves were on the steps and therefore cannot establish constructive notice.  Plaintiff counters that there were leaves on the stairs every time he went to the post office in the one to two weeks prior to his fall, which occurred on a Thursday, and he had not noticed them on the day of the fall "because they were always there at that time."  Thus, Plaintiff argues, a trier of fact could infer that the leaves were on the steps for a period of time long enough that a reasonable inspection would have made their presence known to the Defendant.  The Court is not persuaded by Plaintiff's argument.

"The controlling question in deciding whether the defendant[] had constructive notice of the defective condition is whether the condition existed for such a length of time that the defendants should, in the exercise of reasonable care, have discovered it in time to remedy it.  What constitutes a reasonable length of time is largely a question of fact to be determined in the light of the particular circumstances of a case."  *Riccio*, 281 Conn. at 163-64 (internal quotation marks and citations omitted); *see also Kelly*, 281 Conn. at 777 (same); *James*, 125 Conn. App. at 179 (same).  "The nature of the business and the location of the foreign substance would be factors in this determination. . . To a considerable degree each case must be decided on its own circumstances. Evidence which goes no farther than to show the presence of a slippery foreign

substance does not warrant an inference of constructive notice to the defendant."
*Kelly*, 281 Conn. at 777 (internal citations and quotation marks omitted).  "To
establish constructive notice, [the plaintiff] must adduce some evidence, either
direct or circumstantial, that establishes the length of time the defect was
present."  *Navarro*, 2007 WL 735787, at *4.  Furthermore, "[a]n inference [of
constructive notice] must have some definite basis in the facts . . . and the
conclusion based on it must not be the result of speculation and conjecture."
*Gulycz v. Stop and Shop Cos., Inc.*, 29 Conn. App. 519, 522 (Conn. App. Ct. 1992).

Here, Plaintiff has testified that he did not notice any leaves on the stairs
while walking up and into the Post Office, but has also asserted that he did not
notice these leaves because the continuous presence of leaves on the steps in
the weeks prior to his fall led to his not taking note of them while ascending the
stairs on October 21, 2010.  Even examining these facts in the light most
favorable to Gomes, the Court finds that Gomes has failed to establish
constructive notice because he has not presented any evidence to prove how
long the leaves were present on the steps.  Gomes essentially argues that,
because he noticed leaves on the Post Office steps for one to two weeks prior to
his fall, those leaves must have been present on these steps continuously for that
particular one to two week period of time.  However, Plaintiff has failed to present
even a scintilla of evidence that the leaves on which he claims to have slipped on
October 21, 2010 were the same leaves that he claims to have noticed on any day
prior to the date of his fall, which occurred during the annual foliage season on
an autumn day in New England.  Additionally, Plaintiff has failed to present any

evidence that the leaves on which he slipped while descending the stairs were present on the stairs while he was ascending them two minutes before. Indeed, the only evidence that the wet leaves on which Plaintiff fell existed *prior* to his fall is Plaintiff's assertion that he fell and noticed the leaves upon falling. Moreover, Plaintiff testified that he remained in the Post Office for approximately two minutes before exiting and descending the exterior steps, and that it was raining on October 21, 2010. Plaintiff has presented no evidence that these leaves did not fall to the steps in the two minutes in which Plaintiff was checking his post office box inside. Plaintiff's own testimony that he failed to notice any leaves on the steps while he was walking into the Post Office is telling; if Plaintiff did not notice any leaves on the steps while ascending them, but did notice leaves on the steps after having fallen approximately two minutes later, the Court may infer that the leaves made their way on to the steps in the intervening two minutes.

Connecticut courts have held that, where a Plaintiff cannot establish by some direct or circumstantial evidence how long a dangerous condition was present, summary judgment may be appropriate. For instance, in *Navarro v. Kohl's Dept. Stores, Inc.*, the court granted summary judgment for the defendant where the plaintiff, who had slipped on a wet patch on the floor of the department store, did not present evidence that would support a reasonable inference as to the length of time the spill was in place. 2007 WL 735787. The court concluded that "the only evidence that the defect existed prior to [plaintiff's] fall is that she fell. Neither [plaintiff] nor any of the deposed store employees testified to seeing the spill or having notice of it prior to the accident. Without at least some

evidence, direct or circumstantial, . . . , as to how long the spill existed prior to [plaintiff's] fall, it would be too speculative for a jury to infer the length of time the spill was in place so as to establish constructive notice."  2007 WL 735787, at *5. The court further concluded that "[s]peculation as to the probability or improbability of the timing of an occurrence is not . . . evidence of when the occurrence took place," and the evidence was insufficient for a jury to reasonably infer that the liquid was on the floor for any time longer than seconds.  *Id*.

Similarly, in *Colombo v. Stop And Shop Supermarket Co., Inc.*, the appellate court affirmed summary judgment where the plaintiff, who alleged that she slipped on milk in the defendant's store, presented insufficient evidence as to how the milk was spilled or how long it had been on the floor.  67 Conn. App. 62, 64 (Conn. App. Ct. 2001).  The only evidence proffered by plaintiff was that the milk was dirty, leading the plaintiff to assume it had been on the floor for some time.  The court held that "[t]he plaintiff [did not satisfy] the burden of proffering some evidence, either direct or circumstantial, from which the jury could infer that the defect she allegedly encountered existed for a length of time sufficient to put the defendant on actual or constructive notice of its existence."  *Id*. at 64. Likewise, in a case whose details are similar to those at issue here, the court in *Budd v. U.S.* granted summary judgment for the defendant where plaintiff alleged injuries incurred from a fall on several drops of water on a post office floor.  No. 3:08CV131(MRK), 2009 WL 3538648 (D. Conn. Oct. 23, 2009).  The district court concluded that summary judgment was appropriate where plaintiff offered no evidence regarding how long the drops had been on the floor, how they got there,

**16**

or how often the lobby of the post office was inspected or cleaned.  The court further noted that "the drops could have arrived on the floor a minute and one-half before [plaintiff] slipped. Thus, the record contains absolutely no evidence from which a jury could infer constructive notice—that is, the wet 'condition existed for a length of time sufficient for the defendant's employees, in the exercise of due care, to discover the defect in time to have remedied it.'"  *Id.* at *2 (internal citations omitted).  Here, as in *Budd*, where Gomes cannot offer evidence that the leaves were on the steps for longer than mere minutes, he likewise cannot prove that the alleged dangerous condition on the steps "existed for a length of time sufficient for the defendant's employees, in the exercise of due care, to discover the defect in time to have remedied it."

Thus, where Gomes has presented no evidence as to how long the leaves on which he slipped were present on the exterior steps, the Court may not infer that the leaves were present for any longer than minutes or even seconds. Therefore, Plaintiff has failed to sufficiently allege that the Defendant had constructive notice of any dangerous condition in time to remedy it.  *See, e.g., Gulycz*, 29 Conn. App. 519 (affirming trial court's dismissal where plaintiff failed to offer evidence suggesting how long the defect – a protruding hinge and screw on a shelf at the end of a check-out aisle – had existed); *Mason*, 2012 WL 1959006, at *2 (granting summary judgment where the plaintiff could not show that the water on which he slipped and fell existed long enough for the defendant to take corrective action, and holding that "it would be unreasonable for this court to find that the defendant had constructive notice of a hazardous condition

17

that had been in existence for but one minute"); *Shaw v. Kmart Corp.*, No. CV065000627S, 2007 WL 2242710, at *3 (Conn. Super. Ct. July 13, 2007) (holding that summary judgment was appropriate where "[t]he plaintiff fail[ed] . . . to offer any evidence, direct or circumstantial, to show that the wet spot [on which plaintiff slipped and fell] had existed for any period of time" and only argued that "because it had stopped snowing the day before, the defendant's employees had a sufficient length of time to anticipate, observe and clean up any wet spots that were likely to accumulate on the floor;" further concluding that plaintiff's argument had no merit because it did not "demonstrate that the specific wet spot that caused the plaintiff's injury had existed for any length of time and it merely suggests that general conditions naturally productive of wet spots existed."); *Deptula v. New Britain Trust Co.*, 19 Conn. Supp. 434, 436-437 (Conn. C. P. 1955) (entering judgment for defendants where the source of the water on the floor on which plaintiff slipped was known, but there was no evidence as to how long the wetness was present; therefore, without at least some evidence of how long the condition existed, it would be too speculative to infer that the water was on the floor for any more than "minutes or even seconds"); *Chaves v. Exxon Mobil Corp.*, No. 306CV1589(JCH), 2009 WL 57119 (D. Conn. Jan. 5, 2009) (dismissing case where plaintiff failed to produce any evidence of where the liquid on which he slipped came from or when it had appeared).

Moreover, even if the Post Office had notice of leaves on the steps, the Defendant may have a valid affirmative defense of contributory negligence based on Gomes' own admissions.  Gomes has admitted that he was inattentive while

**18**

ascending and descending the steps and has thus failed to meet his burden of exercising due or reasonable care to assure his own safety.  Gomes admitted that he did not notice any leaves while climbing the steps to the Post Office, and also confirmed both that there was nothing obstructing his view of the steps when he climbed them and that he was familiar with the Post Office and the steps leading up to it.  Instead, Gomes contends that "[t]here were leaves on these stairs every time I went to the post office in mid to late October 2010."  Even given his allegation that the leaves had been present on the steps for approximately two weeks before his fall, Gomes claims to have noticed "a lot of leaves" only after he fell.  Moreover, he posits that he would not have noticed the leaves had he not fallen.  *If*, as Gomes contends, there were "a lot of leaves" on the steps and leaves had been present every time Gomes had visited the Post Office in October before his fall, and given that Gomes admittedly failed to notice these leaves while ascending the steps, then a reasonable juror would conclude that Gomes failed to exercise due care for his own safety while he was descending the Post Office steps.

Consequently, for the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.

### Plaintiff's Request for Additional Discovery

Plaintiff requests additional time to pursue discovery pursuant to Fed. R. Civ. P. 56(d) because the attorney who was handling his case left the firm without having conducted a deposition or depositions of the person or persons employed

by Defendant to inspect and maintain the Norwich Post Office.  Plaintiff does not specify how this additional discovery might uncover "facts essential to justify its opposition" to Defendant's motion for summary judgment and gives no further explanation as to why discovery was not adequately conducted during the allotted time period.  Fed. R. Civ. P. 56(d).  "In a summary judgment context, an opposing party's mere hope that further evidence may develop prior to trial is an insufficient basis upon which to justify the denial of [a summary judgment] motion."  *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138, (2d Cir. 1994) (internal quotation and citation omitted).  "Requests for discovery in the face of motions for summary judgment put forth by parties who were dilatory in pursuing discovery are disfavored."  *Id*, at 1139.

In this case, the deadline for conducting discovery was August 31, 2012, some nine months after Plaintiff filed this simple negligence case.  Additionally, Gomes filed an administrative claim around November 29, 2010 with the United States Postal Service seeking redress for injuries from the fall which is the subject of this suit prior to the commencement of this action on November 25, 2011.  Thus, the Plaintiff had the reason and opportunity to have discovered facts relevant to his claim for more than a year and a half before the close of discovery.  Consequently, the time has passed for such depositions to be taken.  Furthermore, the Plaintiff has failed to show how the additional discovery request would create a genuine issue of material fact or is essential to his opposition to Defendant's motion.  Therefore, the Court DENIES Plaintiff's request for additional discovery.  *See Latimore v. NBC Universal Television Studio*, No. 11–

1202–cv, 2012 WL 1863787, at *1 (2d Cir. May 23, 2012) (affirming district court's denial of additional discovery where plaintiff had "more than enough time to conduct discovery, and she did not demonstrate that further discovery would likely uncover any evidence of [copyright violations]."); *Cornell v. Kapra*, No. 11–530–cv, 2012 WL 1506049, at *1 (2d Cir. May 1, 2012) (affirming district court's denial of additional discovery where six months elapsed without either party noticing a deposition, and where plaintiff failed to file an affidavit sufficiently explaining the need for additional discovery as required by Rule 56(d)).

## V.    Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's request for additional discovery is DENIED.  The Clerk is directed to close the case.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge


Dated at Hartford, Connecticut: November 19, 2012